Turner v. Hitchcock.

hearsay evidence of the witness *Shade,* and. therefore, we will remand the cause and award a new trial.

Reversed.

---

## TURNER *v.* HITCHCOCK *et al.*

### I. Per DILLON J., all the judges concurring.

1. **Change of venue: PREJUDICE OF JUDGE:** In all civil cases, applications for changes of venue, where made in time, and upon proper affidavits filed, are not addressed to the discretion of the court. It is, under the statute, otherwise in criminal causes.

2. **Trespass: RELEASE:** A release of a person as a joint trespasser to a person who is not in fact liable to the releasor, does not destroy the right of action of such releasor, against those who are liable.

3. **Torts: JOINT OR SEVERAL ACTION:** If several persons jointly commit a tort, the plaintiff in general has his election to sue all, or some of the parties jointly, or one of them separately.

4. —— **SEPARATE ACTIONS: ONE SATISFACTION.** Separate actions may be maintained against the several joint tort-feasors for the same trespass; but there.can be but one satisfaction, even though there be several verdicts or judgments.

5. —— **RELEASE.** As a general rule the release of one *joint wrongdoer* discharges all.

6. —— **DAMAGES NOT SEVERABLE: CONTRIBUTION.** The damages sustained by reason of a tort, are not severable or apportionable between the wrongdoers; and there is no contribution among tort-feasors, as upon joint demands arising *ex contractu.*

7. —— **RELEASE BY OPERATION OF LAW.** Tort feasors may be discharged from liability for their tort by operation of law, as the consequence of acts voluntarily done by the plaintiff.

### II. Per DILLON, J., and LOWE, Ch. J.; WRIGHT, J., and COLE, J., dissenting.

8. —— **RELEASE BY MARRIAGE.** Where the plaintiff in an action of trespass intermarried with one of the joint trespassers after the commission of tort, it operated to discharge all the wrongdoers.

III. DILLON, J., all the judges concurring.

9. —— FORCIBLE ABATEMENT OF NUISANCE. The case of *Brown* v. *Perkins et ux.* and *The State of Iowa* v. *May, ante,* as to abatement of premises where liquors are sold contrary to law as a nuisance, cited with approval.

*Appeal from Butler District Court.*

THURSDAY, JUNE 7.

CHANGE OF VENUE: PREJUDICE OF JUDGE: RELEASE OF ONE JOINT TORT-FEASOR: EFFECT OF: ABATEMENT OF NUISANCE. — The petition charges and the testimony shows, that on the 2d day of July, 1864, a number of women in the town of Shell Rock, Butler county, organized and made a raid or descent upon the saloon of the plaintiff, destroying ale, beer, glasses, oysters, candies, figs, &c. This action is brought against six of these women, who, with their husbands, are the defendants. One, B. W. Johnson was also made a defendant. The defendants (except Johnson, who did not join in the amended answer), answer.

1. In denial.

2. That plaintiff's premises were a common and public nuisance, being a gambling house and a place where intoxicating liquors were sold contrary to law; that the supposed trespass was simply the act of the defendants in abating the nuisance.

3. That one Mrs. Almina Champlin (not made a defendant) was one of the trespassers, and that since then and before the action was brought, the plaintiff and said Almina have intermarried and are now husband and wife.

4. That since the action was commenced, the plaintiff has released the defendant Johnson.

On these issues the cause was tried to a jury and a verdict returned for the defendants. On the trial the plaintiff excepted to certain rulings of the court, as noticed in the opinion, and now appeals.

*G. C. Wright* and *M. W. Anderson* for the appellants.

I. A release to a person who is not, in fact, liable to the releasor, will not destroy the right of action against those who are liable. *Wilson* v. *Reed*, 3 Johns., 175; 1 Pars. Cont., 28; *Jackson* v. *Young*, 1 Cow., 132; *Crawford* v. *Milspaugh*, 13 Johns., 87; *De Zeng* v. *Bailey et al.*, 9 Wend., 336; *Frentress* v. *Markel*, 2 G. Greene, 558. A covenant not to sue one is not a release to the others. *Bank of Catskill* v. *Messenger*, 9 Cow., 37; *Rowley* v. *Stoddard*, 7 Johns., 207; *Harrison* v. *Close*, 2 Id., 448; *Conch* v. *Mills*, 21 Wend., 424; *Lane et al.* v. *Owings*, 3 Bibb., 247; Pars. Cont., 28; *Quigley* v. *Merritt*, 4 Iowa, 475.

II. The action for damages in trespass partakes of the nature of an action of replevin or detinue, being founded upon tort; in the action of replevin, we sue for the property, and for its wrongful detention, and we claim damages. In detinue, we sue for the property, or the value, with damage for the wrongful taking or detention thereof; while in the action at bar, we claim for the damage done us by the destruction, taking and carrying away of the property. It is a familiar principle of law, that where replevin or trover will lie for the wrongful taking of the personal property of another, trespass will also lie or is a concurrent remedy. Black., 208, 3 Book. Under our statute a *feme covert* may sue, or be sued in an action of replevin or detinue. We claim that the same rights obtain in an action like the one at bar. This principle was decided in the Supreme Court, in the case of *Jones* v. *Jones*, 1 Pars. Cont., 28; 2 Id., 199; *Lane et al.* v. *Owings*, 3 Bibb., 247; *Moncrief* v. *Ely*, 19 Wend., 408.

To justify a person in taking the law into his own hands in abating a nuisance at common law, it should appear that the nuisance was a particular injury to his person or property, and operating prejudicially at the time of its abatement,

Turner v. Hitchcock.

and then, only in cases of particular emergency, requiring a more speedy remedy than can be had by ordinary proceedings at law. *State* v. *Moffatt et al.*, 1 G. Greene, 247; *Moffatt et al.* v. *Brewer et al.*, 1 Id., 348; 3 Blacks., 5, note 6.

*J. E. Powers* and *J. E. Burke* for the appellee.

1. That the marriage of the plaintiff to one of the joint wrongdoers is a release of all. 1 Pars. Cont., 29; 2 Id., 222; 1 Bright on Hus. and Wife, 18, § 2. 2. As to the abatement of the premises as a nuisance. *Whitmore* v. *Tracy*, 14 Wend., 250; *The State of Iowa* v. *Moffatt*, 1 G. Greene, 247.

DILLON, J. — I. It is assigned as error that the court improperly refused to change the venue of the cause. An affidavit was filed by the plaintiff fully complying with section 2803 of the Revision, stating that the judge was so prejudiced against him that he could not obtain a fair trial, and that this fact was unknown to him at the last term of the court. The court refused to change the venue and the plaintiff excepted.

**1. CHANGE OF VENUE: prejudice of judge.**

The appellee seeks to sustain the ruling on the ground:

1st. That a previous application on the same day had been made, and overruled and no exception taken.

The record, however, shows that exception was taken.

2d. On the ground that the application states no *facts* showing the prejudice of the judge. This is true, but the statute does not require the facts to be stated.

3d. On the ground that it is a matter of *discretion*, and no abuse of it is shown.

In civil cases, when applied for in time, and the proper affidavit is filed, it is not a matter of discretion. In criminal cases it is, under the statute relating thereto, otherwise. Rev., § 4733.

Whether the distinction in this respect made by the statute between the two classes of cases is a wise one, is a matter for legislative and not judicial consideration.

II. The trespass sued for was committed July 2d, 1864. The plaintiff was married to Almina Champlin, September 14, 1864. This action was brought October 24, 1864, and the plaintiff's wife (the said Almina), was not made a defendant. On these facts certain instructions complained of were given. As above stated, one B. W. Johnson was made a party defendant. Just prior to the trial the plaintiff filed the following paper in the case :

| | |
|---|---|
| " CHARLES E. TURNER<br>*v.*<br>CHARLES HITCHCOCK *et al.* | *In Butler District Court.*<br>*June Term,* 1865. |

To B. W. JOHNSON :

*Sir :* You are hereby notified that the plaintiff makes no personal claim against you in said cause, and relinquishes all claim for judgment against you or your property.

June 9, 1865.

      (Signed)      C. E. TURNER,
           *by Anderson & Wright, his Attorneys.*"

Johnson's deposition was taken on behalf of the plaintiff and read in evidence on the trial. He denied therein that he had any part in the trespass. The notice to Johnson, above given, was read in evidence. (Service whereof on Johnson was accepted by him in writing thereon indorsed.)

In reference to these facts, the court charged the jury as follows :

"The marriage of the plaintiff to one of the parties to the trespass charged, is an accord and satisfaction to that party and to all the parties associated or connected with her in the trespass." The plaintiff excepted.

Turner v. Hitchcock.

On this point, the plaintiff asked, and the court *refused*, the following instruction : "If the plaintiff intermarried with one of the trespassers since the trespass, that *fact alone* is not such an accord and satisfaction as will discharge the other trespassers."

Respecting the notice to Johnson, the court charged : "If the jury find from the evidence that the plaintiff has released and discharged B. W. Johnson, one of the defendants, they must find for the defendants." Plaintiff excepted.

2. TRES-
PASS: re-
lease.

Upon the same subject the plaintiff asked and the court *refused* the following instructions : "12th. Unless you find that the defendant, B. W. Johnson, was one of the trespassers, his release does not discharge the other defendants." "13th. The plaintiff may discharge a defendant who is not a trespasser without discharging the trespassers."

It is the opinion of this court that these last two instructions ought to have been given. It was held in *Wilson and Gibbs* v. *Reed*, 3 Johns., 175, that a release to a person as a joint trespasser who is not in fact liable to the releasor, will not destroy the right of action against those who are liable. This must be so in the nature of things.

Whether the written notice to Johnson alone, without more, would be such a release as would discharge his co-trespassers (if he had been one), we need not particularly notice. It probably would if given upon or for a consideration, otherwise not. Nor do we think, as argued by the appellee, that the plaintiff, having sued Johnson as a joint trespasser, was estopped from asking the law contained in the foregoing instructions.

III. Whether the plaintiff's marriage with one of the joint trespassers destroyed his right of action against the others is a most interesting question, and if decided against him, probably fatal to his recovery.

It has, therefore, received very careful consideration, the

more particularly as the court have not been able to agree in opinion respecting it. No case deciding the exact question here presented, has been called to our attention by counsel, nor have we, in our examination, discovered any adjudication of this precise point.

It must, therefore, be determined upon general common law principles. Some of these principles bearing more or less directly upon it, will now be stated in order the better to exhibit the grounds of the conclusion which I have reached.

1. The injury sued for is a tort wholly unconnected with contract, and in such cases the well settled and undisputed

**3. TORTS:** joint and several action (*infra*).

common law rule as to *parties defendants* is very succinctly and correctly stated by Mr. Chitty, (1 Plead., 99): "If several persons jointly commit a tort, the plaintiff in general has his election to sue all or some of the parties jointly, or one of them separately; because a tort is, in its nature, a separate act of each individual." *S. P. Guille* v. *Swan*, 19 Johns., 381; *Livingston* v. *Bishop*, 1 Id., 290; *Wright* v. *Lathrop*, 2 Ohio, 33. And consequently the nonjoinder of part of the wrongdoers cannot be pleaded in abatement or defense. Id; 2 Hill. on Torts, 441, pl. 9, and cases. The Revision has altered the common law rule which required all *joint debtors* to be sued (Rev., § 2764; *Bovill* v. *Wood*, 2 M. & S., 23; 1 Pars. on N. & B., 247), but has made no alteration of the rule in relation to *torts*.

Although the liability is thus separate as well as joint, the injury sued for is an *entirety*. The injury is single, though the wrongdoers may be numerous.

**4. —— separate actions; one satisfaction** (*infra*).

2. Whether separate actions can be maintained against the several joint tort-feasors for the same trespass, is a question upon which the authorities differ.

Chitty lays it down that they cannot. 1 Plead., 79, 101.

But in this country the contrary has been frequently decided. *Livingston* v. *Bishop*, 1 Johns., 290; *Wright* v. *Lathrop*, 2 Ohio, 33; *Baker* v. *Lovett*, 6 Mass., 78; *Page* v. *Freeman*, 19 Mo., 421; *Knott* v. *Cunningham*, 2 Sneed (Tenn.), 204; *Ellis* v. *Betzer*, 2 Ohio, 89; *Gehee* v. *Shafer*, 15 Texas, 198; *Blaune* v. *Cocheron*, 20 Ala., 320; and see *Bird* v. *Randall*, 3 Burr., 1345; *Morton's Case*, Cro. Eliz., 30.

But the cases all agree (see on this point those last cited) that there can be but *one satisfaction*, even though there be several verdicts or judgments.

3. It is also an undisputed principle of the common law, that as a general rule the *release* of one *joint wrongdoer* releases all. The rule and the reason for it are thus stated in a work of high authority: "If divers commit a trespass, though this be joint or several, at the election of him to whom the wrong is done, yet if he releases to one of them, all are discharged, because his own deed shall be taken most strongly against himself. Also (which seems to be the better reason) *such release is a satisfaction in law which is equal to a satisfaction in fact*. Bacon's Abr., Release B.; see also *Bronson* v. *Fitzhugh*, 1 Hill (N. Y.), 185, where the common law authorities are fully collected; *Brown* v. *Marsh*, 7 Verm., 320; *Gilpatrick* v. *Hunter*, 11 Shep. (Me.), 18.

Not only does accord and satisfaction by one wrong-doer discharge all, but a partial satisfaction by one is, on the same principle, a discharge, *pro tanto*, to the other. *Merchants' Bank* v. *Curtis*, 37 Barb.; *Snow* v. *Chandler*, 10 N. H., 92. "The reason of the rule" that the release of one is the release of all, "seems," says BRONSON, J., with his accustomed clearness and force (1 Hill, 185, *supra*), "to be that the release being taken most strongly against the releasor, is conclusive evidence that he has been *satisfied for the wrong*; and *after satisfaction, although it moved from*

*only one of the tort-feasors, no foundation remains for an action against any one. A sufficient atonement having been made for the trespass, the whole matter is at an end. It is as though the wrong had never been done."*

While this doctrine is frequently limited, especially in a case of joint contracts, to technical *releases*, still it is always applied, both in tort and contract, where, although there has been no formal release, there has been a *satisfaction* as to one. This is well exemplified in *Ellis* v. *Bitzer*, above cited; see also 1 Dane Abr., 139, § 4; 2 Saunders, 47 *t*; *Clayton* v. *Kynaston*, 2 Salk., 573; *Merchants' Bank* v. *Curtis, supra; Snow* v. *Chandler*, Id., *supra; Thurman* v. *Wilde*, 3 Perry & Dav. Rep., 289; *S. C.*, 11 Ad. & E., 453.

4. It is also settled that the damage is not severable or apportionable between the wrongdoers, but the act of each is the act of all. Not only so, but unlike the case of joint demands arising *ex contractu*, there is no contribution among tort-feasors, who have all *knowingly* committed a wrong. *Merryweather* v. *Nixon*, 8 Tenn., 183 (1796); *Farebrother* v. *Ansley*, 1 Campb., 343 (1808); *Wilson* v. *Milner*, 2 Id., 453 (1810); *Betts* v. *Gibbons*, 4 Nev. & Man., 77; *S. C.*, 2 Ad. & El., 57; *Nelson* v. *Cook*, 17 Ill., 443 (1856); 2 Greenl. Ev., 115; 1 Parsons on Cont., 37; note and cases; *Jacobs* v. *Pollard*, 10 Cush., 287.

6. — damages not severable: contribution

5. It is also settled that a release, satisfaction or discharge may be by *operation of law*, as the consequence of acts done voluntarily by the plaintiff. "When," says Ch. Justice ROBERTSON, in *Allin* v. *Shadburne*, 1 Dana, 68, "a legal cause of action *once subsisting* has been suspended by the voluntary act of the party who was entitled to it, it is, in most cases, considered as released by law." See also *Thomas* v. *Thompson*, 2 Johns., 470, 473, and authorities cited.

7. — release by operation of law (*infra*).

Therefore it is that "if a *feme* creditor marry her debtor, or *one of two joint debtors*, the debt is (at common law aside from statute), discharged by the unity of the right and liability." Chitty on Cont., 782; Co. Litt., 264 *b*; 1 Bright on Hus. & W., 18 pl. 2; Bac. Abr., Release B., 1 Eng. ed., 609; 8 Co., 136; Dyer, 140, per ROBERTSON, C. J., *Allin v. Shadburne*, above cited; *Roberts v. Peake*, 1 Salk., 325; as to *contracts* see in this State, Revision, § 2764.

In view of these principles, and these are all which seem to bear upon the question whether favoring or dis-favoring the defense, I am of the opinion (in 8. —— release by marriage (*infra*). which the Chief Justice concurs), that the defense is a good one, and that the view of the learned judge below, as embodied in the instructions, was correct.

If the plaintiff had not married one of the trespassers, it is true that the present defendants could not have objected to her nonjoinder, and if made liable, could have had no redress upon, or contribution from her. As they have not been injured by the marriage, how, it may be asked, can they avail themselves of that fact, to be exonerated from their wrong?

The answer is this: The injury to the plaintiff was a *unit, single* and *entire*, for which he is entitled to but *one* satisfaction, "each joint trespasser being," says Judge SHERMAN, in *Ellis* v. *Betzer, supra*, "liable to the extent of the injury done by all, it follows as a necessary consequence, that a satisfaction made by one, for his liability, operates as a satisfaction for the whole trespass, and a discharge of all concerned."

Or, in the language of Judge BRONSON, above quoted, "After satisfaction, although it moved from only one of the tort-feasors, no foundation remains for an action against any one; the whole matter is at an end; it is as though the wrong had never been done."

"A satisfaction in law is equal to a satisfaction in fact." Bac. Abr., *supra.*

A discharge to one wrongdoer is a discharge to all, "for," says MANSFIELD, Ch. J. (*Dufresne* v. *Hutchinson*, 3 Taunt., 117), "if it were otherwise, the plaintiff might get paid by each defendant, to the whole amount of the injury sustained."

It will be readily seen, therefore, that the rule that a *release* (which is conclusive evidence that the party injured has been *satisfied* for the wrong) or *satisfaction* from one wrongdoer inures to the benefit of the whole, is not purely technical, but founded upon reason. A. and B. jointly do me an injury. My damage is $100. I may sue both or each. But though I may get two judgments for $100 each, I can get but one satisfaction. I cannot be compelled to look to A. for $50 and B. for $50, for the law allows no severance of a single and indivisible injury. If A. pays me $100, and I acknowledge satisfaction, it is clear that I ought not still to recover another $100 from B. for the same wrong. If I choose to acknowledge myself satisfied for less than $100, the result must be the same. I ought not to be permitted to recover *another* or a new *satisfaction;* and this I am prevented from doing by the rule of law under consideration, and which it is unjust to characterize as being unreasonable or simply technical. It follows from the foregoing authorities and reasoning, that if the plaintiff for any consideration, one dollar or more, which he regarded as sufficient, had acknowledged satisfaction of the injury as to Mrs. Champlin, all of her co-wrongdoers would have been discharged, even though this was not intended, and even though a right of action against the others was reserved. This proposition is not denied. Now, as above shown, a release or satisfaction or extinguishment of a cause of action may be by

*operation of law* upon the voluntary act of the party as well as by his writing or other act.

Does his subsequent marriage with one of the trespassers *satisfy, discharge* or *extinguish his right of action against her?* Of this there can be no doubt. Suppose after the marriage he had commenced suit against her alone for this trespass, would any court have allowed a recovery? It is not pretended that he could have recovered. His action against her is therefore gone, gone by his voluntary act.

It may be said that the rule in this particular case operates with unreasonable severity. But suppose the trespass had been committed alone by his present wife and one other, and that his wife had instigated and led on the other. It would seem hard in such a case that the plaintiff should omit the woman, now his wife, and recover alone against the others; and yet he could do so, if he would be entitled to recover in the present action.

In other words, the number of trespassers does not affect the principle.

*And we cannot say that the satisfaction which the law implies from the marriage is not as valuable to the plaintiff, as if Mrs. Champlin had, instead of marrying him, paid him the full amount of his loss.* It may be urged, and is in the non-concurring opinion of Mr. Justice WRIGHT, that to hold the defendants discharged, effects a result not *intended* by the plaintiff when he married one of the wrongdoers. This is not material, and is not so regarded by the authorities.

The rule is even applied against the intention. As an illustration of this, take the case of *Ellis* v. *Bitzer*, 2 Ohio, 89, where, in an action of tort (trespass) against *five*, the plaintiff accepted a note against *two* for a sum of money to be paid at a future day, in satisfaction as to them, *but not to be a satisfaction for the other defendants.* It was, nevertheless, held that the action was discharged as to all.

The reason for this is very clearly stated in the opinion of Judge SHERMAN. The satisfaction discharged all as a matter of law. ' It was a legal defense, and the two who settled could not by any act or contract of theirs deprive the others of this defense.

IV. There are other questions in the case of less import-ance, and which, as they may not again arise, we need not extend the opinion by considering.

Respecting the alleged right to abate the premises as a nuisance, we direct attention to the decision in the sister State of Massachusetts in the important case of *Brown* v. *Perkins and wife*, an abstract of which may be found in 2 Hill. on Torts, 96, *note*; and see *State* v. *May*, at present term. For the error in refus-ing to change the venue, and to give the twelfth and thir-teenth instructions asked by the plaintiff respecting the release of the man Johnson, we are unanimously of the opinion that the judgment should be reversed and the cause remanded for a new trial. On the other question the court is equally divided, and the ruling of the District Court thereon is affirmed by operation of law.

<div style="margin-left:2em">9. —— forci-ble abate-ment of nuisance.</div>

Reversed.

LOWE, Ch. J., concurring. — Inasmuch as the very well considered opinion by Mr. Justice DILLON is questioned by two members of the court, on one point, namely, that the marriage of the plaintiff with one of the joint wrongdoers has the effect in law to discharge the other defendants, I am induced to add a few considerations in order to exhibit the grounds of my concurrence therein.

There are some general principles of law clearly settled, alike applicable to joint torts as well as contracts, from which may legitimately be deduced the rule which should govern and settle the point in dispute, in my opinion.

Whilst a tort committed by a number of persons is, in its nature, the separate act of each, yet it may be treated as joint and several, at the option of the injured party. If the plaintiff elects to fix a several liability upon them, yet he can have but one satisfaction, for the reason that the injury is single and indivisible, and cannot be apportioned into parts, and hence, if satisfaction is made by one, he can have no contribution from the others. Now, a release by deed and for a consideration to one of several wrongdoers discharges all the others. This is a rule of law as little open to controversy as that which discharges joint and several obligors by a release to one of their number.

3. TORTS: joint and several action. *(infra)*.

4. —— separate action: one satisfaction *(ante)*.

5. —— release *(ante)*.

Indeed, it is not discovered from the books that there is any distinction in the doctrine of releases in the form or manner of its application to torts and that of contracts. These releases, whether they apply to one or the other, are of two kinds, express or implied, or, which is the same thing, those which are by deed and those which become so by operation of law. We all understand the force and meaning of a technical release in fact, and that its legal effect is the same, whether given to one of several wrongdoers or to one of several obligors.

6. —— release by operation of law *(ante)*.

We ask next whether releases in law or by necessary implication apply alike to and cover both classes of liabilities referred to, namely, those arising out of contracts, and those out of wrongs.

That they do extend to and embrace contracts is admitted, and the books give many familiar examples. Justice DILLON, in the opinion just read, refers to some of them. Among them the case where an obligee intermarries with one of several obligors, on the same paper, the effect by operation of law is to release the liability of the others.

Story in his work on contracts, §§ 998, 999 and 1000 says, "releases arise by mere operation of law in several ways:

Turner v. Hitchcock.

1. By the assuming of a relation between the parties, inconsistent with the relation of creditor and debtor, as if the parties marry," or if the debtor make his creditor his executor.

2. By taking higher securities, as where a bond is substituted in place of a single contract debt, and has a remedy co-extensive with the original debt.

3. By either party making a material alteration in a specialty or written contract without the consent of the other party."

These, without mentioning other examples, will sufficiently show the doctrine of implied releases, as it relates to contracts.

But the question still remains, whether this same rule of implied releases does or does not extend also to liabilities incurred by the commission of trespasses.

Why not? We find no such qualifications of the doctrine in the books, nor can we conceive of any good reason why a distinction should be made in the two descriptions of liabilities; one to be sure arises from debt, the other from an injury done, but both are to be discharged in money. Now upon this point Parsons, in his very excellent work on the law of contracts, first vol., p. 28, treating of the subject of joint parties, says: "It may be added, though not strictly within the law of contracts, that the effect of a release of damages to one of two wrong-doers, is the same as a release of debt; and it is in its operation a satisfaction of the whole claim arising out of the tort, and discharges all the parties."

Again, on the succeeding page of the same volume he remarks: "Only a voluntary release by the party injured, or claimant, has the effect of discharging all, although given but to one; for if one or two who owe jointly either a debt or *compensation for a wrong* be discharged by operation of law, without the concurrence or consent of the

party to whom the debt or compensation is due, he does not thereby lose his right to enforce his claim against those not discharged.

But, it is said, that if the discharge by operation of law is at the instance of the plaintiff, or be caused by him, then it operates as a discharge of the other debtors.

Prof. Parsons unquestionably understands the law to be, that implied releases extend to wrongdoers as well as debtors. They must, however, be voluntary by the injured party, that is, the act which operates as a discharge of other parties implicated, must be done willingly, at the instance of the plaintiff, or caused by him.

Was not that the case with the plaintiff in this action? After the wrong of which he complains was committed, and before suit brought, did he not marry one of the women notoriously implicated in the transaction and thereby voluntarily assume a relation wholly incompatible with his rights as an injured party, and her liability as a wrongdoer? Certainly, for the reason, that by the act of marrying he so blended his remedial rights as against her on the one hand, and her liability even to him on the other, that the law cannot take cognizance of one or the other. Their legal and social status are changed. New rights, responsibilities and duties are imposed by the marriage. She is thereby not only exonerated from the damage which she assisted others in committing, but is placed by the relation she holds to her husband, if this suit is to be maintained, where she can reap an advantage from her own wrong. Such a consequence the law does not permit; and hence the law intends that the intermarriage with one of the wrongdoers shall have the effect to release the others, and it is no answer to this, that the marriage can make no difference with the defendants in this suit, because if it had not occurred, they nevertheless could have been sued and held equally

*s. —— release by marriage, ante.*

responsible, without including the plaintiff's wife therein if she had remained single, and that, too, without the right of contribution from her. This is true, but the doctrine of releases by implication 'does not stand exclusively upon any such principle; it rather springs out of the policy of the law. Courts not unfrequently release parties under instruments which have been altered, and that, too, when the alteration did not in the least affect them injuriously. Why? Because it is the policy of the law to maintain the integrity of such instrument intact and not to allow them to be tampered with by either party.

In this case, the defendants may or may not have suffered prejudice from the marriage of one of their number with the plaintiff. However this may be, the fact remains that the plaintiff did marry one of the wrongdoers. By this act he has absolutely barred all right of recovery for the alleged injury, as against her, as effectually as if he had executed a written release to her for a valuable consideration. Not only so, but (what a written release would not have done) he has placed her, in virtue of her marital rights, in a position to reap the fruits of her own wrong, by sharing with him whatever compensation may be recovered from her co-trespassers.

I deduce from the foregoing the following conclusions of law: 1. That the doctrine of implied releases extends to joint and several as well as to joint contracts; and that the reason why the marriage of the plaintiff with one of the co-obligors discharges the others is, not that he has done an act, the effect of which in law disables him from suing a part without suing all, and for that reason they are discharged (for whether joint or several, under the Code of this State, suit could be maintained against one or more), but rather because he has done an act inconsistent with his relations as a creditor to the other parties, and involves the absurd consequence that if he is

allowed to sue the other parties, and recover the amount of the indebtedness as against them, they in law would have the right, on account of the co-liability of his wife to sue him in return for contribution. Such a practice being mischievous in its tendency, is deemed against the policy of the law, and hence it is adjudged that the marriage of the payee with one of the payors shall have the effect in law to discharge the others. 2. That the doctrine of implied releases extends to torts as well as to contracts. See both Parsons and Story on Contracts, *supra.*

It is true, all of the same reasons cannot be urged for the enforcement of the doctrine in such cases. For instance if compensation for damages be made by a part of the trespassers, they would have no right of contribution against the others.

But the second reason, and others of equivalent strength, apply in their full force, namely, a marriage with one of the wrongdoers, is just as inconsistent with the relations of the injured party and the trespasser, as though they were debtor and creditor; for as between them the right to recover compensation for damages on the one hand, and the liability to pay on the other, are united by the act of marriage in the plaintiff; and thereby works an absolute cancellation of all liability on the part of the wife, for the wrong; certainly as much so as if instead of marrying her he had executed and delivered a written release under seal.

This last act, without more, it is conceded, would, in law, at once discharge all the other co-trespassers. Why not the marriage covenant? It has precisely the same effect in law as the written release.

Both alike extinguish the right of action; nay more, the marriage contract has a much worse consequence, a mischief which public policy will and ought to rebuke, which has already been alluded to, that of introducing a practice whereby one of several joint trespassers obtain

an actual benefit from her own wrong at the expense of others not more guilty, perhaps, than herself. Then again, as the marriage utterly extinguishes the right of action, so in contemplation of law it becomes a satisfaction of the claim as against the party with whom the plaintiff intermarries. And as he can have but one satisfaction, so it follows that the other co-wrongdoers are discharged.

In my opinion the necessity of upholding the doctrine of releases, both in fact and in law, is as urgent now as ever it was, that the principle itself is based upon grounds both adequate and legal, as well as founded in the policy of the law, and if in contravention of these the plaintiff has done an act which bars a right of action he must abide his own folly.

WRIGHT, J., *dissenting.* — I cannot concur in the conclusion reached in the foregoing opinion as to the effects of plaintiff's intermarriage with Almina Champlin, one of the joint tort-feasors. No authority is referred to directly maintaining it, nor have I been able to find any.

The technical rule relied on, has, where applied to cases occurring within it, in my judgment, but little reason to sustain it; and this little even fails under the facts of this case. The single question is, if two or more persons unite in the commission of a trespass, and plaintiff shall afterwards intermarry with one of said joint trespassers, does such intermarriage have the effect of a technical satisfaction of the trespass and bar plaintiff's right of action against the other wrongdoers. Some general rules in relation to this form of action are stated in the foregoing opinions, and are undisputed. Thus, in an action against joint wrongdoers, plaintiff may sue any of them, and the non-joinder of others cannot be pleaded in abatement. As the liability of such persons is originally severable as well as joint, its character is not changed by

3. TORTS: joint and several action.

4. — separate actions, one satisfaction.

6. — damages not severable (*ante*).

the commencement of a joint action, and, therefore, one may be acquitted and the others found guilty.

And this *several* liability to the party injured carries with it the further consequence, as between themselves, that one cannot demand contribution from the other; the rule being that wrongdoers shall not have contribution one from another.

So plaintiff can have but one recompense in damages for the same injury; and whether he receives it from one or all makes no difference as to its effect; and, therefore, the receipt of satisfaction from one *or the release of one* operates to release all, and this, too, though at the time of the release, it was expressly agreed that it was not to be a satisfaction for the other trespassers.

And yet all these rules being conceded, we are still to inquire whether any and everything which, by mere *operation* of *law*, results in the discharge of one, shall bar the action as to all the others, in the absence of any intention to do so, on the part of plaintiff.

Or, to come back to this case, has plaintiff lost all right of action against the others by his intermarriage with one of the parties originally liable? The rule that accord and satisfaction by one operates as a discharge of others is not founded upon the thought or ground that it is a discharge or release by *contract or agreement*, but that the acceptance of such satisfaction operates *in law* to discharge the other defendants.

And this is seen from the fact that the renunciation of the right to sue the others, makes no difference as to the effect of the discharge of one. The reason of this is clear enough, when we remember that there is legal unity in plaintiff's damages, and he can have but one recompense; he cannot after being recompensed by one, sever a demand which the law makes a unit, and be heard to claim that

which by the legal effect of his own voluntary act, he has discharged.

In other words, he has been satisfied for the trespass, and to permit him to recover against others, would give him a second satisfaction or recompense for the injury already satisfied. This of course cannot be allowed, any more than to permit the collection of all of several judgments recovered for the same injury against the same wrongdoers. Plaintiff may have several judgments, but only one satisfaction. And yet, if the amount received is understood to be only in *part satisfaction*, it will not operate to satisfy the whole demand, but any one sued may avail himself *pro tanto* of the benefit of such partial payment. *Snow* v. *Chandler*, 10 N. H., 92.

To apply the rule referred to in this case, we must go one step further. For we must not only hold that the marriage, by *operation* of *law*, released or discharged the plaintiff's wife, but that this, *by like operation*, released or discharged the other wrongdoers. And thus it occurs that in the absence of any agreement or contract to that effect, an act not intended to release one, but which does so by legal operation, goes still further, and, as an additional consequence, releases others. And yet I have not found a case in all my investigations, which holds other wrongdoers released *by operation of law*, except where there was a contract accepting *satisfaction* of one, or a contract that was made with reference to the particular wrong of which plaintiff complains.

Now, it is said in *Snow* v. *Chandler*, *supra*, that nothing short of *payment of damages* by one of the joint trespassers, *or a release under seal*, can operate to discharge the other trespassers. And to the same effect see *Solly* v. *Forbes*, 2 Brod. & Bing., 46; *Shaw* v. *Pratt*, 22 Pick., 305; *Walker* v. *McCulloch*, 4 Greenl., 421; *Harrison* v. *Close*, 2 Johns., 449; *Rowley* v. *Stoddard*, 7 Id., 209; *DeZeng* v.

*Baily, Bogue & Poor*, 9 Wend., 336. From which I deduce the doctrine at common law that no discharge, except a release under seal, made to one or two or more joint or joint and several promisors or obligors, operates constructively as a release to any one but the person or promisor to whom it is given. Of course, under our statute, the release would be good without being under *seal*, but the principle is not thereby changed. And nothing, it would seem to me, can be clearer, in case of payment, or an effort to discharge by payment of money, than that it is taken in *satisfaction* of the damages incurred, it cannot operate to discharge the claim.

And this rule, as applied to contracts, is even more reasonable in actions *ex delicto ;* for in such cases the liability is always several.

Of course, if as before explained, it is received as a satisfaction from one, it would be equally so as to all, whatever the rights reserved. And if the payment or release can alone operate to discharge the others; then, as plaintiff has not received payment, we are only to inquire whether, within the meaning of the law, he has released one and discharged all of the wrongdoers. It is said to be a rule as well settled as any in the law, that a personal action once suspended, by the voluntary act of the party entitled to it, is forever gone and discharged. And to be equally well settled that if a creditor appoint his debtor his executor, such appointment, if the debtor takes upon himself the burthen of the execution of the will, shall operate *as a release* or extinguishment of the debt. *Thomas* v. *Thompson*, 2 Johns., 471. "But," says the same case, "there are many exceptions to the latter rule, and the leaning of courts of justice has of late been in favor of restricting its generality, and it is, perhaps, to be wished, that it never had existed." Now, what is the reason for this general rule? The lan-

guage of the answer might be put in many forms, but this one may be adopted : In order to determine when the suspension of the remedy works extinguishment of the debt, we ask whether the same hand is to receive that ought to pay, and if so that amounts to an extinguishment. Per HOLT, Ch. J., in *Wardford* v. *Lame*, 1 Salk., 306. And this common law rule was extended so far as to be held, that if a creditor should appoint one of a number of joint and several obligors his executor, the debt is gone, on the ground that a release of one obligor is a release as to all. And still again, that if the obligee marry the obligor, and thereby *suspend the cause of action*, the law deems the marriage a release of the legal obligation. *Allin* v. *Shadburne*, 1 Dana, 68, and cases there cited. And the release thereby of the legal obligation, as to other joint obligors, at common law would be equally effective. And why? Because the marriage suspends the cause of action as to one, and as *all* must be sued and *one* cannot be, of course there is no remedy.

And if cases are found which hold that such constructive release of one, in the case of a *joint and several contract*, operates to release all, they stand, in my opinion, unsupported in reason or principal. Certain it is that such constructive release, by suspending the cause of action as to one, does not operate, as in the case of *joint* contracts, to prevent the suing of the others, for one or all may be sued at the election of the creditor. This, reason, then does not obtain. Is it upon the ground that after the intermarriage with one of the joint and several promisors, she cannot be held to contribution, or if so, the creditor (her husband) would be compelled to pay her portion ; then I say that under our statute I see no trouble in fully protecting the other debtors, in the action upon the note. Rev., §§ 3121–3123. But even assume that this rule is sustainable on this ground, in the case of joint and several contracts, then I say it

utterly fails in actions for torts; for in such cases there can be no contribution. And as the reason for the rule fails, so does the rule itself. And if a learned judge could hold that it is to be wished that the rule as to contracts had never existed, with how much more force and reason may it be said in actions *ex delicto* when the reasons for it never obtained. Certainly, if courts incline to restrict and limit the generality of the rule, in actions *ex contractu*, it ought not to extend to torts without some good and sufficient reason. What I maintain, then, is this: that while a constructive release, or a release by operation of law, of one *joint* contractor, would in common law release all, as effectually as a release technical in form, and while there are cases which give a like effect to a constructive release in the case of joint and several contracts, they are unfounded in reason and unsupported in principle. And, further, that no case has been cited or found by me which holds that a constructive release of one wrongdoer operates to release the others. There is no necessity for such rule, and in view of the nature and character of such actions, the liabilities of the parties and our liberal system of pleading and practice, I do not think we should be the first to furnish the precedent. But, finally, the reason of the rule more conclusively fails under our statute even when applied to contracts. He would certainly, as it seems to me, be a bold jurist who would claim that the marriage of the creditor to one of his joint debtors, or the appointment of one of them as his executor, would have the effect in this State of releasing all the others. For the statute declares that when persons are bound by contract, or by judgment, decree or statute, whether joint only or *joint and several*, or *several* only, including the parties to negotiable paper, * * * the action thereon may, at the *plaintiff's option*, be brought against *any or all of them*. And when any of them so found are dead, the action may

be brought against any or all of the survivors, with any or all of the representatives of the decedents, or against any or all of such representatives.

And an action or judgment against any one or more of several persons jointly bound, shall not be a bar to proceedings against the others (§ 2764), and see *Sellon & Co.*, v. *Braden*, 13 Iowa, 365; *Mosier* v. *Hull*, 15 Id., 603, and consult section 2401 as to the duty of the County Court when an executor is interested in a claim against the estate.

Now I ask whether, under this statute, the creditor might not sue any of the joint promisors or contractors; and whether, if one of the debtors should become an executor, he might not, in his representative capacity, sue any or all of the others? Or whether, if the creditor should marry one of the joint obligors, he thereby discharged all the others? And I ask these questions with the utmost confidence that there can be but one answer and that is, that there is by such acts no such suppression of remedy as operates to release a legal obligation against others. To hold otherwise would continue in force the common law rule, when the statute had destroyed the reason upon which it was based; a rule always more abitrary than reasonable, and makes the husband liable not only for his wife's debts, but indirectly for the debts of all others with whom she might be *jointly* bound to him. And if this is true as to contracts, how much more so as to torts? For if even the marriage would not release the co-obligee, much less would it a co-wrong-doer, for as to the latter, the necessity of a joint action never did obtain. Of course, a release *in fact* of one joint tort-feasor might have the same effect now as heretofore. But what I claim is, that there must be a release based upon that which is paid or treated as a satisfaction for the injury, and not a release arising constructively or resulting as a legal sequence from an act having

no reference to the injury. So holding, I think the ruling below was erroneous, and upon this ground that the judgment should be

<div align="right">Reversed.</div>

COLE, J.—I concur in the foregoing opinion of Justice WRIGHT.