Linda K. ROZEVINK, Appellee,

v.

James FARIS and Gayle E. Faris, Appellants,

and

James R. Mundell and Brian Freeze, Appellees.

No. 83–512.

Supreme Court of Iowa.

Dec. 21, 1983.

John B. Grier, of Cartwright, Druker & Ryden, Marshalltown, for appellants.

James C. Wilson, K. Allan Voss, of Wilson, Hall, Wilson & Craig, Eldora, for appellee Linda K. Rozevink.

Barker, McNeal, Wiese & Hold, Iowa Falls, for appellees James R. Mundell and Brian E. Freese.

WOLLE, Justice.

This appeal raises the question whether the doctrine of joint and several liability in Iowa is affected by this court's recent adoption of comparative negligence. We hold that it is not. The trial court correctly held that the defendants were jointly and severally liable to plaintiff for damages caused by their combined negligence.

Plaintiff Linda Rozevink was injured while riding on a motorcycle owned by Brian Freese and driven by James Mundell. The motorcycle was following a pickup truck that was owned by James and Gayle Faris and driven by Gayle Faris. Mundell attempted to pass the pickup truck on the right. Faris, however, made a turn to the right and collided with the motorcycle. As a result, plaintiff sustained personal injuries and commenced this negligence action against the owners and operators of both vehicles.

None of the defendants alleged that the plaintiff was negligent. The Farises, however, by amendment to their answer alleged that they should be held liable at most for that percentage of the total negligence which was attributable to their actions. The trial court granted the plaintiff's motion to strike that allegation, but at the Farises' request the court did submit to the jury the following special interrogatory:

> Taking the combined negligence which caused the accident to be 100 percent, what percentage of the total negligence is attributable to:
>
> 1. The Defendant Gayle E. Faris
>
> _____
>
> 2. The Defendant Brian E. Freese
>
> _____

The jury returned a verdict for plaintiff and against all defendants in the amount of $27,611.31. Answering the special interrogatory, the jury assigned to Gayle Faris 17% of the total negligence and to Brian Freese 83% of the negligence. In their post-trial motions the Farises urged the trial court to enter judgment against them for only 17% of the plaintiff's damage award. The trial court, however, relied on traditional principles of Iowa law and decisions from other jurisdictions in holding the Farises jointly and severally liable. It is Farises' appeal from that ruling that presents the only issue now before us. Farises advocate a change from the doctrine of joint and several liability to a pure allocation of liability based on proportionate fault.

I. *Background and Basis for the Doctrine.*

Defendants who act in concert may be joint tortfeasors; so may those whose tortious conduct has contributed to causing a single, indivisible injury. A number of legal consequences may flow from a finding that defendants are joint tortfeasors. The consequences of that finding have varied as different jurisdictions have applied in traditional or modified form three common law rules: first, the rule that the release of one joint tortfeasor released all; second, the rule that prohibited contribution be-

tween joint tortfeasors; and third, the rule that each joint tortfeasor was jointly and severally liable for a plaintiff's entire loss. *See generally* V. Schwartz, *Comparative Negligence* § 16.3 (1974); W. Prosser, *Law of Torts* §§ 46–50 (4th ed. 1971).

Iowa cases have modified the first two rules. *See Community School District of Postville v. Gordon E. Peterson, Inc.*, 176 N.W.2d 169, 175 (Iowa 1970) (release of one tortfeasor only releases all if parties so intend); *Best v. Yerkes*, 247 Iowa 800, 805–10, 77 N.W.2d 23, 27–29 (1956) (permitting equitable contribution between joint tortfeasors). Farises now urge that we change the third common law rule.

Our court initially approved the doctrine of joint and several liability in *Turner v. Hitchcock*, 20 Iowa 310 (1866), a case adopting the rule that the release of one joint tortfeasor releases all. In *Turner* a saloon owner brought suit against several women who had entered and damaged his establishment. Before the suit was filed, the plaintiff married one of the women; she was not named as a defendant. The defendants argued as a defense that the plaintiff had released one of the tortfeasors, his wife, and since the women were joint tortfeasors the defendants were also released. In deciding the case, the court first noted that the defendants were joint tortfeasors, stating:

> Although the liability is thus separate as well as joint, the injury sued for is an *entirety*. The injury is single, though the wrong-doers may be numerous.

20 Iowa at 316 (emphasis in original). The court held that the marriage of the plaintiff to one of the joint tortfeasors satisfied and discharged his cause of action against his wife and thereby discharged the cause of action against all the defendants, explaining:

> The injury to the plaintiff was a *unit, single*, and *entire*, for which he is entitled to but *one satisfaction*. "Each joint trespasser being ... liable to the extent of the injury done by all, it follows as a necessary consequence, that a satisfaction made by one, for his liability, oper-

ates as a satisfaction for the whole trespass, and a discharge of all concerned."

20 Iowa at 319 (emphasis in original) (quoting *Ellis v. Betzer*, 2 Ohio 89).

In 1929, our court held that the doctrine of joint and several liability applies when two separate negligent actions combine to cause a plaintiff's injuries. *McDonald v. Robinson*, 207 Iowa 1293, 224 N.W. 820 (1929). In *McDonald*, two cars collided, interlocked, and slid into a pedestrian. The injured pedestrian sued both drivers. One defendant contended on appeal that joint and several liability was inapplicable unless the defendants acted in concert, with a common intent or purpose. Our court disagreed, holding:

> If the acts of two or more persons concur in contributing to and causing an accident, and but for such a concurrence the accident would not have happened, the injured person may sue the actors jointly or severally, and recover against one or all, according to the proven or admitted facts of the case.... The injury in this case was indivisible. There was no possible way by which it could be said that the negligence of one or of the other of the defendants was the sole proximate cause thereof.

207 Iowa at 1295–97, 224 N.W. at 821–22. *Accord Drake v. Keeling*, 230 Iowa 1038, 1050, 299 N.W. 919, 925 (1941).

Thus, joint and several liability in Iowa is based on the concept that ordinarily personal injuries are indivisible and not apportionable among defendants whose negligence has been their proximate cause. As William Prosser has explained:

> Where a logical basis can be found for some rough practical apportionment, which limits a defendant's liability to that part· of the harm which he has in fact caused, it may be expected that the division will be made. Where no such basis can be found, and any division must be purely arbitrary, there is no practical course except to hold the defendant for the entire loss, notwithstanding the fact that other causes have contributed to it.

The distinction is one between injuries which are reasonably capable of being divided, and injuries which are not. If two defendants, struggling for a single gun, succeed in shooting the plaintiff, there is no logical or reasonable basis for dividing the injury between them, and each will be liable for all of it. If they shoot him independently, with separate guns, and he dies from the effect of both wounds, there can still be no division, for death cannot be divided or apportioned except by an arbitrary rule devised for that purpose. If they merely inflict separate wounds, and he survives, a basis for division exists, because it is possible to regard the two wounds as separate injuries; and the same is of course true as to wounds negligently inflicted. There will be obvious difficulties of proof as to the apportionment of certain elements of damages, such as physical and mental suffering and medical expenses, but such difficulties are not insuperable, and it is better to attempt some rough division than to hold one defendant for the wound inflicted by the other.

W. Prosser, *Law of Torts* § 52, 313–14.

The traditional Iowa view is also consistent with the position adopted by the American Law Institute. Section 875 of the Restatement of Torts (Second) (1977) provides:

Each of two or more persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm.

Comment *b* to that section explains:

This section is concerned only with harm that is not divisible. If the tortious conduct of two or more persons has contributed to the harm in such a manner that each is a legal cause of it, the liability is not apportioned and each is liable for the entire harm.

## II. *The Effect of Comparative Negligence.*

A. The Farises argue that this traditional basis for joint and several liability is undermined by this court's adoption of comparative negligence in *Goetzman v. Wichern,* 327 N.W.2d 742 (Iowa 1982). They reason that the doctrine of joint and several liability only made sense when courts had no method for apportioning damages among co-tortfeasors. Now, they argue, comparative negligence under *Goetzman* provides a method for the division of damages between a plaintiff and defendants based on the percentage each party's negligence bears to the total negligence that proximately caused the damages. They therefore urge us to use the same rationale whether or not a plaintiff is negligent and apportion damages among defendants as well. The Farises also assert that fairness demands that they be held liable for no more than the percentage of negligence attributable to them, again citing *Goetzman* where we said:

Under a system of comparative negligence, the keystone to fairness is proportionate responsibility for fault, not the relative severity of injuries. Each party's recovery of damages is reduced in proportion to that party's responsibility for them. As a result, no one is unjustly enriched.

327 N.W.2d at 754.

In response, plaintiff argues that the adoption of comparative negligence need not automatically mandate the abrogation of joint and several liability. She relies heavily on cases from other jurisdictions which have judicially adopted comparative negligence but retained joint and several liability. Of the six jurisdictions that have judicially adopted comparative negligence and also addressed the issue of joint and several liability, only New Mexico has abrogated the doctrine. *Taylor v. Delgarno Transportation, Inc.,* 100 N.M. 138, 667 P.2d 445 (1983); *Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 646 P.2d 579 (Ct.App.), *cert. denied* 98 N.M. 336, 648 P.2d 794 (1982). Alaska, California, Illinois, Michigan and West Virginia have not. *Arctic Structures, Inc. v. Wedmore,* 605 P.2d 426 (Alaska 1979); *American Motorcycle Association v. Superior*

*Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978); *Coney v. J.L.G. Industries, Inc.*, 97 Ill.2d 104, 73 Ill.Dec. 337, 454 N.E.2d 197 (1983); *Weeks v. Feltner*, 99 Mich.App. 392, 297 N.W.2d 678 (1980); *Sitzes v. Anchor Motor Freight, Inc.*, 289 S.E.2d 679 (W.Va.1982).

B. Before analyzing the parties' contentions and the cases on which they rely, we note that both the plaintiff and the defendants focus primarily, as will we, on cases from other jurisdictions like Iowa which have adopted comparative negligence by judicial decision. The legal analysis is necessarily different in jurisdictions whose law is based on comparative negligence statutes of various types or whose statutes have specifically abolished or modified joint and several liability.

At last count (from checking authorities cited by the parties) of the thirty-eight other states that have adopted comparative negligence by statute or judicial decision, twenty-nine have completely retained joint and several liability, five have retained the doctrine in a modified form, and only three have done away with it (two by statute, one by court decision).

■ Neither do the parties here contend that we should in any way base our decision on the recently-enacted Iowa statute which will take effect on July 1, 1984 and provides:

The doctrine of joint and several liability shall not apply if a plaintiff is found to bear any comparative negligence with respect to any claim.

1983 Iowa Acts ch. 198, § 28. That statute is inapplicable here because of its delayed effective date and because plaintiff was neither alleged nor found to have been negligent.

■ C. Farises do make one statute-based public policy argument, contending that Iowa Code chapter 516A discloses an intent to require plaintiffs rather than defendants to bear the risk that one of several defendants will be insolvent. While the issue of joint and several liability does present the policy question of who should pay for the insolvent tortfeasor, we find neither an express nor implied answer to that policy question in chapter 516A. The statute merely requires automobile insurers to make uninsured motorist coverage available to owners of automobiles who purchase insurance. It is relevant only in those tort cases that involve owners of automobiles who choose to purchase insurance. Moreover, Iowa does not even require motorists to have liability insurance. Iowa Code ch. 321A (1983); *Walker v. American Family Mutual Insurance Co.*, 340 N.W.2d 599, 601 (Iowa 1983).

Our decision therefore does not turn on statutory interpretation. We must rather find in the common law decisions of Iowa and other states our answer to the question whether the doctrine of joint and several liability is reasonably compatible with comparative negligence and basically sound and fair in its application to this case.

D. To determine whether the long-established Iowa doctrine of joint and several liability is compatible with pure comparative negligence we must reexamine *Goetzman*. The holding was clear:

We hold that in all cases in which contributory negligence has previously been a complete defense, it is supplanted by the doctrine of comparative negligence. In such cases contributory negligence will not bar recovery but shall reduce it in the proportion that the contributory negligence bears to the total negligence that proximately caused the damages.

327 N.W.2d at 754. That holding delineated a rule for a specific category of cases and displaced a single doctrine, the doctrine of contributory negligence. *Goetzman* eliminated in that specific category of cases the total bar to recovery which a negligent plaintiff had faced under contributory negligence. A *quid pro quo* was effected. The contributory negligence bar to recovery was replaced by a formula for reducing the amount that the plaintiff would be allowed to recover. The amount of the plaintiff's recovery would be reduced in that proportion (by that percentage) that the

plaintiff's negligence bears to the total negligence that proximately caused damages. We found that percentage reduction a sufficient penalty for plaintiffs to pay for their own negligence. *Goetzman* left room for us to retain joint and several liability and find that any one defendant is still liable for payment of the reduced amount a plaintiff recovers from that defendant and others jointly causing the injury.

■ In contrast, the underlying basis for joint and several liability in Iowa is that when the negligent acts of two or more defendants proximately cause a plaintiff's injury and the injury is indivisible, the plaintiff may sue the defendants jointly and severally and recover against one or all. *McDonald v. Robinson,* 207 Iowa at 1295–97, 224 N.W. at 821–22; *see also* Restatement of Torts (Second) § 875 (1977). This is compatible with comparative negligence; under *Goetzman,* the injury is not divided but the recovery for the injury is proportionately reduced. The actors who caused harm are liable not for the entire harm but for the proportionally reduced amount. For that amount defendants may, consistent with our theory of comparative negligence, be held jointly liable.

Were we to modify or eliminate joint and several liability as Farises here advocate, the burden of the insolvent defendant would fall entirely on the plaintiff, and the plaintiff's damages would be reduced beyond the percentage of negligence attributable to that plaintiff. Comparative negligence does not mandate this further reduction.

Our conclusion is supported by the great weight of authority from other states which have decided the issue on common law principles. The doctrine of comparative negligence has been retained in all but one of the six jurisdictions which have adopted comparative negligence by judicial decision and addressed the issue. The reasons given by those five courts have not been uniform but the underlying principle remains. Each of the five has concluded that negligent defendants should in fairness continue to bear the full responsibility for payment of the reduced amount a comparatively negligent plaintiff may recover in damages.

New Mexico courts alone have reached a contrary result, concluding that fairness to all the parties and not just plaintiffs require the abrogation of joint and several liability in that state. *Taylor v. Delgarno Transportation Inc.,* 100 N.M. at 140, 667 P.2d at 447 (dictum); *Bartlett v. New Mexico Welding Co.,* 98 N.M. at 159, 646 P.2d at 585. We disagree, finding more persuasive the reasoning given by the Illinois Supreme Court which we find consistent with our *Goetzman* decision:

> Were we to eliminate joint and several liability as the defendant advocates, the burden of the insolvent or immune defendant would fall on the plaintiff; in that circumstance, plaintiff's damages would be reduced beyond the percentage of fault *attributable to him.* We do not believe the doctrine of comparative negligence requires this further reduction. Nor do we believe this burden is the price plaintiffs must pay for being relieved of the contributory negligence bar. The *quid pro quo* is the reduction of plaintiff's damages.

*Coney v. J.L.G. Industries, Inc.,* 97 Ill.2d at 123, 454 N.E.2d at 205 (emphasis in original). Similarly, a Michigan court of appeals decision succinctly summarized the reason comparative negligence in that state did not undermine joint and several liability: "Unlike the concept of contributory negligence [comparative negligence] avoids unduly penalizing a plaintiff for his own fault." *Weeks v. Feltner,* 99 Mich.App. at 395, 297 N.W.2d at 680.

■ We hold that Iowa's joint and several liability doctrine is both sound as applied in this case and unaffected by our adoption of pure comparative negligence. The trial court correctly held all defendants jointly and severally liable for the entire amount of the plaintiff's judgment.

AFFIRMED.

All Justices concur except REYNOLDSON, C.J., and UHLENHOPP, J., who dissent, and LARSON, J., who takes no part.

UHLENHOPP, Justice (dissenting).

In *Goetzman* we adopted "pure" comparative negligence—"proportionate responsibility for fault". 327 N.W.2d at 754. Applying that concept when the incident involves two actors but not applying it when the incident involves more than two actors seems fundamentally incongruous to me. Why should any of the actors be responsible for more than his or her share of the blame?

I realize that variations may occur as, for example, where one of the actors has no underlying liability at all because of absolute immunity. But the present incident is a simple case of three actors without immunities, and I would apply "proportionate responsibility for fault" to all of them.

Joint and several liability for all the damage was a judge-made concept to begin with. Judges can modify it for comparative negligence cases as they modified it in cases of a release of a joint tortfeasor and contribution between joint tortfeasors. *Community School District of Postville v. Gordon E. Peterson, Inc.*, 176 N.W.2d 169 (Iowa 1970); *Best v. Yerkes*, 247 Iowa 800, 77 N.W.2d 23 (1956).

As actor A (plaintiff Rozevink) was guilty of no fault which brought about the damages, she should bear no responsibility for the damages; as actor B (defendant Gayle Faris) was guilty of 17% of the fault which brought about the damage, she (and James Faris) should bear 17% of the responsibility for the damages; and as actor C (defendant Mundell) was guilty of 83% of the fault which brought about the damage, he (and defendant Freese) should bear 83% of the responsibility for the damages. I would reverse for a substituted judgment accordingly.

REYNOLDSON, C.J., joins in this dissent.