Edna SPECK, Appellee,

v.

UNIT HANDLING DIVISION, A DIVISION OF LITTON SYSTEMS, INC., and Newell Machinery Company, Inc., Appellants.

No. 83–1532.

Supreme Court of Iowa.

April 17, 1985.

Ross H. Sidney and Brian L. Campbell of Grefe & Sidney, Des Moines, for appellant Unit Handling Div.

Jeff H. Jeffries and John E. Orrell, Jr. of Hopkins & Huebner, Des Moines, for appellant Newell Machinery Co., Inc.

Dennis W. Johnson and Quentin R. Boyken of Belin, Harris, Helmick & Heartney, Des Moines, for appellee.

Considered by HARRIS, P.J., and McGIVERIN, SCHULTZ, CARTER and WOLLE, JJ.

WOLLE, Justice.

We granted this interlocutory appeal to address defendants' contention that princi-

ples governing strict liability for sale of defective products should be modified to comport with our adoption of pure comparative negligence in *Goetzman v. Wichern*, 327 N.W.2d 742 (Iowa 1982). The trial court applied products liability case law in effect prior to *Goetzman* in striking affirmative defenses alleging negligence of the plaintiff and her employer, and denying the defendants' attempts to obtain contribution from plaintiff's employer. We affirm, holding that *Goetzman* did not overturn the established common law principles which provided the basis for the trial court's rulings.

## I. *The Pleaded Claims.*

The pleadings disclose issues which are fairly typical in a products liability case. Plaintiff Edna Speck alleged that while she was working in the plant of her employer Iowa Periodicals, Inc. (employer) on August 19, 1980, her hand became trapped between a conveyor belt and roller, causing severe injuries. The belt and roller had been manufactured by defendant Unit Handling Division and sold to the employer by defendant Newell Machinery Company.

Plaintiff's petition at law alleged separate theories of recovery for negligence, breach of warranty, strict liability based upon the product's defective condition, and strict liability based on the defendants' failure to warn of known dangers. Plaintiff's employer filed a notice of lien for workers' compensation paid to plaintiff. In response, to the strict liability claims, Unit Handling asserted several affirmative defenses—plaintiff's misuse of the product, plaintiff's subjective assumption of risk, and plaintiff's negligence which, they alleged, should proportionately reduce her recovery. Additionally, both defendants alleged that the employer was negligent and requested permission to bring a third party action against the employer to recover contribution in an amount equal to the employer's percentage of fault, or at least an amount representing the employer's workers' compensation lien.

The trial court struck from Unit Handling's answer affirmative defenses directed to the strict liability counts in which it alleged that the employer had been negligent and that the plaintiff had negligently caused her own injuries. The trial court also denied the defendants' request to join the employer as a third party defendant against whom they wished to obtain contribution.

We address first the issue whether a plaintiff's negligence in the ordinary sense is a defense to a strict liability action, then the question of contribution from the employer. We do not address plaintiff's contention that comparative negligence concepts should be applied to the defenses of alleged misuse of the product and subjective assumption of risk. The trial court was not asked to rule on those questions, and plaintiff did not apply for interlocutory appeal nor file a cross-appeal.

## II. *Is a Plaintiff's Ordinary Negligence a Defense to a Strict Liability Claim?*

In *Hawkeye-Security Insurance Co. v. Ford Motor Co.*, 174 N.W.2d 672 (Iowa 1970) this court adopted the principles found in the Restatement (Second) of Torts section 402A and recognized that a plaintiff may recover on a theory of strict liability in tort when injured by a defective product. *Id.* at 682–84. In our second *Hawkeye-Security* opinion which followed a retrial of that case, we held:

Since this action sounds in strict liability in tort, rather than in negligence, the defense of contributory negligence in its ordinary sense is not available. By "ordinary sense" in this context we intend to include in contributory negligence any failure to discover or guard against possible defects of finished products. *Williams v. Brown Mfg. Co.*, 45 Ill.2d 418, 261 N.E.2d 305, 310; Hursh, *American Law of Products Liability*, 1971 Supp., § 5A:26, pp. 331–332; Prosser, Torts, 4th Ed. § 79, p. 522; Restatement, Second, Torts, § 402A, Comment n., p. 356; Anno., 13 A.L.R.3d 1057, 1100–1101; Carmichael, *Strict Liability in Tort— An Explosion in Products Liability Law*, 20 Drake L.Rev. 528, 550–551; *con-*

*tra, Dippel v. Sciano,* 37 Wis.2d 443, 155 N.W.2d 55, 63–65.

Therefore, plaintiff's conduct in merely failing to discover the defect, or in failing to guard against its possible presence, will not absolve the defendant of liability. 199 N.W.2d 373, 380 (Iowa 1972). Thereafter, in *Hughes v. Magic Chef, Inc.,* 288 N.W.2d 542 (Iowa 1980), we fine-tuned the elements of a strict-liability defective product case (*Id.* at 544–45), clarified Iowa law governing the affirmative defense of assumption of risk in its secondary sense (*Id.* at 545, 548), and held that alleged misuse of a product is an element of the cause of action, not an affirmative defense (*Id.* at 546–48). This substantive law providing for strict liability of sellers of defective products was firmly in place before our adoption of pure comparative negligence in 1982. *See Barger v. Charles Machine Works, Inc.,* 658 F.2d 582, 587 (8th Cir. 1981) ("[w]e note initially that Iowa courts do not recognize contributory negligence as a defense to a claim based on strict liability in tort.").

Defendants now advance several reasons why we should modify our rule that contributory negligence in its ordinary sense does not constitute a defense to a strict liability action. We have carefully considered each of these reasons but conclude that neither individually nor collectively do they give us sufficient reason to overturn established precedent.

A. The Effect of *Goetzman.* Defendants argue that it would be inconsistent for us to apply liability proportionately to fault in other negligence cases but not in cases involving allegedly defective products. They contend that a plaintiff's negligence should reduce the plaintiff's recovery in proportion to the percentage of a plaintiff's fault which proximately caused injuries, even though the manufacturer, seller, or other distributor of a product may itself have been negligent in putting a defective product on the market. We disagree primarily because we believe the defendants misconstrue the fundamental premises on which *Goetzman* was decided.

When this court in *Goetzman* adopted comparative negligence, it did not jettison all preexisting principles of tort law. The holding was narrow:

We hold that in all cases in which contributory negligence has previously been a complete defense, it is supplanted by the doctrine of comparative negligence. In such cases contributory negligence will not bar recovery but shall reduce it in the proportion that the contributory negligence bears to the total negligence that proximately caused the damages.

327 N.W.2d at 754. As we thereafter said in *Rozevink v. Faris,* 342 N.W.2d 845, 849 (Iowa 1983), "that holding delineated a rule for a specific category of cases and displaced a single doctrine, the doctrine of contributory negligence."

We did not in *Goetzman* change the law governing ordinary contributory negligence as a defense to strict liability in cases involving defective products, because when *Goetzman* was decided contributory negligence was not a defense in such cases. To paraphrase *Goetzman,* this is a collateral issue which we anticipated would eventually be raised and now address in the context of this concrete case. 327 N.W.2d at 754. We find that *Goetzman* is compatible with our holding in the second *Hawkeye-Security* case refusing to recognize contributory negligence in its ordinary sense as a defense to strict liability, and we choose not to modify that holding. 199 N.W.2d at 380.

B. The Effect of Recent Legislation. In 1984 our legislature adopted a comprehensive comparative fault statute which will answer for future cases the questions this case presents. 1984 Iowa Acts ch. 1293 (West). Its provisions are inapplicable to this case because by express provision that statute applies only to cases filed on or after July 1, 1984 (with the exception of the section governing joint and several liability which applies to cases tried on or after July 1, 1984). *Id.* § 15. The new comparative fault statute installs a modified form of comparative negligence patterned largely after the Uniform Compara-

tive Fault Act. Its definition of fault extends comparative negligence principles to cases involving allegedly defective products regardless whether strict liability or negligence is pleaded:

As used in this chapter, "fault" means one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages.

1984 Iowa Acts ch. 1293 § 1 (to be codified as Iowa Code § 668.1).

Defendants urge us to apply comparative negligence principles to this strict liability action notwithstanding the statute's explicit specification of effective dates. They contend we otherwise will "create an anomaly regarding those cases filed prior to July 1, 1984." We disagree.

First, the statute is truly comprehensive, modifying Iowa negligence law in many respects in addition to those which are here at issue. We would complicate the many cases arising in this interim period and create a truly anomalous situation in Iowa tort law if we ignored the statute's explicit wording concerning its effective date on some issues but complied with that expressed legislative intent on other issues. We have already decided not to give premature effect to the new statute's *pro rata* rule governing credit for partial settlements. *Glidden v. German,* 360 N.W.2d 716, 721 (Iowa 1984) ("Had the legislature intended the comparative fault act to apply to all cases *pending* on or after July 1, 1984, it would not have used the words 'filed' and 'tried' in fixing its effective dates."). We have also reaffirmed preexisting principles relating to subjective assumption of risk, actions against an employer for contribution, and joint and several liability in cases decided after *Goetzman*

but filed before the new statute took effect. *See Campbell v. Van Roekel,* 347 N.W.2d 406, 409–11 (Iowa 1984) (refusing to revive subjective assumption of risk as complete defense or allow comparative negligence to reduce punitive damages); *Thompson v. Stearns Chemical Corp.,* 345 N.W.2d 131, 136 (Iowa 1984) (disallowing tortfeasor's claim for contribution against injured parties' employer); *Rozevink v. Faris,* 342 N.W.2d at 849–50; (doctrine of joint and several liability compatible with pure comparative negligence).

■ In accord with the approach we have adopted in these recent decisions, we hold that the new comparative fault statute does not affect the relationship between a plaintiff's alleged negligence in the ordinary sense and a seller's alleged strict liability for placing a defective product in the stream of commerce.

C. *Decisions from Other Jurisdictions.* We recognize that many other jurisdictions permit a comparative negligence defense in products liability cases regardless whether the theory of recovery is negligence or strict liability in tort. Cases from other jurisdictions are adequately catalogued for our purposes in *Coney v. J.L.G. Industries, Inc.,* 97 Ill.2d 104, 112–14, 73 Ill.Dec. 337, 341, 454 N.E.2d 197, 201 (1983).

First, we note that many of the cases on which defendants rely had been decided at the time we carefully considered substantive provisions of strict liability law in *Hughes v. Magic Chef, Inc.,* 288 N.W.2d 542 (Iowa 1980). In *Hughes* we reaffirmed our previous holding that contributory negligence in its ordinary sense is not a defense to a strict liability claim involving a defective product, even though certain conduct of a plaintiff may constitute a complete defense. *Id.* at 544–48. We are still comfortable with the substantive common-law principles which *Hughes* laid down.

The reasons other states have modified their rules governing an injured party's fault in products liability actions based on strict liability relate as much to the varying ways those states' statutes apportion fault as to any fundamental concept of fairness

in these cases. *See, e.g., Suter v. San Angelo Foundry & Machine Co.,* 81 N.J. 150, 164, 406 A.2d 140, 147 (1979) (comparative negligence statute applicable to strict liability actions "in those circumscribed areas in which plaintiff's conduct may be found to constitute contributory negligence"); *Seay v. Chrysler Corp.,* 93 Wash.2d 319, 322–23, 609 P.2d 1382, 1384 (1980) (comparative negligence statute held inapplicable to strict liability cases).

In addition, many courts which have allowed a plaintiff's conduct to reduce recovery in strict liability actions have applied that comparative negligence concept only to the defenses of misuse of product and assumption of risk, not to negligence in its ordinary sense. *See, e.g., West v. Caterpillar Tractor Co.,* 336 So.2d 80, 90 (Fla. 1976) (assumption of risk and misuse may reduce recovery in strict liability action but ordinary negligence will not); *Coney v. J.L.G. Industries, Inc.,* 97 Ill.2d at 119, 73 Ill.Dec. at 344, 454 N.E.2d at 204 (misuse and assumption of risk but not simple negligence will reduce recovery); *Austin v. Raybestos-Manhattan, Inc.,* 471 A.2d 280, 287 (Me.1984) (assumption of risk but not ordinary negligence reduces recovery in strict liability action).

■ We abide the rationale of the Restatement (Second) of Torts, section 402A, as the touchstone for determining whether and to what extent negligence of a plaintiff is a defense to a strict liability case under that section. Comment n of that section still provides:

> *Contributory negligence.* Since the liability with which this section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

■ Defendants' several reasons why we should modify our previous decisions with regard to contributory negligence in products liability cases do not persuade us that the trial court was wrong in its rulings. The trial court properly struck the allegations of plaintiff's negligence in the pertinent affirmative defense pleaded by Unit Handling.

III. *May a Strictly Liable or Negligent Seller Obtain Contribution From a Plaintiff's Employer?*

In *Iowa Power and Light Co. v. Abild Construction Co.,* 259 Iowa 314, 318–22, 144 N.W.2d 303, 306–08 (1966), we held that a person liable in negligence to another person's employee may not obtain contribution from the employer who was charged with the responsibility to provide workers' compensation for the employee. The *Abild* opinion thoroughly reviewed the law of Iowa and other jurisdictions, then concluded that the tortfeasor might maintain an action for indemnity against the employer based on several theories but not an action for contribution. This court reasoned that the tortfeasor would be unable to establish common liability, a prerequisite for equitable contribution, because the employer's liability would derive exclusively from the statute mandating payment of workers' compensation. *Id.* at 319, 144 N.W.2d at 306.

■■ In *Thompson v. Stearns Chemical Corp.,* 345 N.W.2d 131 (Iowa 1984), we revisited the *Abild* holding against a backdrop of comparative negligence and the strict liability applicable to sellers of products. Like defendants in this case, the defendant in *Thompson* sought contribution from the employer of an employee who had brought negligence and strict liability

claims arising out of use of an allegedly defective product in his work place. Like defendants here, the defendant in *Thompson* contended that our adoption of comparative negligence should lead to a rejection or modification of *Abild* in negligence as well as strict liability cases. We declined to abandon *Abild,* pointing out that our denial of contribution had been "based on the lack of common liability between a third party and an employer." *Id.* at 134. We wrote:

> The real issue is whether we wish to cast out or redefine our rule conditioning contribution on the common liability of joint tortfeasors.

*Id.* That precise issue is again before us, both with regard to defendants' request to permit full contribution proportionate to the parties' fault, and their somewhat narrower request to permit contribution as an offset against the amount of the employer's workers' compensation lien. Our conclusion is the same as in *Thompson.* The right of contribution in Iowa is conditioned on the existence of common liability, and the employer may not be held liable for contribution because the statutory liability under our workers' compensation law is unlike the defendant tortfeasors' liability based on negligence or strict liability theories. *Id.* at 136.

The trial court also properly struck Unit Handling's affirmative defense asserting that the employer's negligence should reduce proportionately its liability to the plaintiff. Such a proportionate reduction of plaintiff's recovery would impermissibly shift to plaintiff a burden to defend allegations of the employer's negligence when under *Thompson* the employer's negligence is not a basis on which the seller may escape or reduce its liability to the injured party.

The trial court correctly applied established principles of Iowa law, which both preceded and survived our adoption of comparative negligence, in denying defendants' attempt to obtain contribution from plaintiff's employer and also in striking the affirmative defense concerning plaintiff's alleged negligence.

AFFIRMED AND REMANDED.

All Justices concur except HARRIS, J., who concurs in result only.