PRUDENTIAL LIFE INSURANCE COM-
PANY and Nichols-Thornton-Sturgeon
Development Company, Movants,

v.

John B. MOODY, Mark Joseph Edwards,
Stephen L. Reinstedler, Catherine L.
Reinstedler, Patty M. Metcalfe, and
Charles M. Krish, Respondents.

Supreme Court of Kentucky.

Sept. 5, 1985.

Henry A. Triplett, Bennett, Bowman, Triplett & Vittitow, Louisville, for movants.

C. Michael Hatzell, Hatzell & Groves, James C. Ludwig, Louisville, for respondents.

STEPHENSON, Justice.

The decision of the Court of Appeals permitted the respondents to recover their full amount of damages from one tortfeasor after a joint tortfeasor was freed from liability by this court. We granted discretionary review and reverse.

Respondents were injured when a balcony on which they were standing collapsed. Prudential Life Insurance Company and Nichols-Thornton-Sturgeon Development Company (whose interests are similar) owned the building, and David Carney was the builder. The respondents sued Prudential, Nichols-Thornton-Sturgeon, and Carney, alleging negligence in construction as to Carney and failure by Prudential to discover the defects and to maintain the building in a safe manner. At trial, Carney raised the statute of limitations as a defense, arguing that because the building had been completed more than five years before the accident, KRS 413.135 barred the action against him. The trial court rejected this argument and submitted the case to the jury. The jury returned a ver-

dict against both defendants, apportioning the liability 50 percent to Prudential and 50 percent to Carney. The Court of Appeals affirmed that award, but this court granted discretionary review, and in *Carney v. Moody*, Ky., 646 S.W.2d 40 (1983), we reversed the judgment as to Carney, finding that the five-year statute of limitations was applicable.

Respondents then moved the trial court to have a judgment entered against Prudential for the entire amount of the jury award. The trial court refused this request, but the Court of Appeals reversed that decision, one judge dissenting. The Court of Appeals reasoned that if the trial court had properly dismissed Carney from the case before it was submitted to the jury, full liability would have been assessed against Prudential. Therefore, it was proper to assess 100 percent of the liability against Prudential after this court freed Carney of liability.

The apportionment of liability among joint tortfeasors is statutory, contained in KRS 454.040, which provides:

In actions of trespass the jury may assess joint or several damages against the defendants. When the jury finds several damages, the judgment shall be in favor of the plaintiff against each defendant for the several damages, without regard to the amount of damages claimed in the petition, and shall include a joint judgment for the costs.

The Court of Appeals reasoned that apportionment is permitted only against "defendants" which necessarily means joint defendants, citing *Nix v. Jordan*, Ky., 532 S.W.2d 762 (1975), and concluded since we held that Carney should have been dismissed on his plea of limitations, he could not have been considered a "defendant" in the literal sense for the purpose of the apportionment statute. We are of the opinion the Court of Appeals is in error in this respect. We do not give such a narrow reading to KRS 454.040.

We are of the further opinion the circumstances of this case fall squarely within the factual situation in *Daulton v.*

*Reed*, Ky., 538 S.W.2d 306 (1976). In a three-way automobile collision case, the Reeds filed suit against Daulton and Phillips. Before the case was submitted to the jury, the Reeds dismissed their claim against Phillips. The jury verdict apportioned causation 75% against Daulton and 25% against Phillips. The trial court rendered judgment against Daulton for the full amount since Phillips had been dismissed from the suit. We held the trial court in error, that the judgment against Daulton should have been for 75% of the award to the Reeds. We reasoned that the principle of *Orr v. Coleman*, Ky., 455 S.W.2d 59 (1970), applies when there has been an active assertion of a claim against one who would be a defendant but for the fact that he has settled the claim. The same rationale applies to the situation in which the claim asserted by the Reeds against Phillips was later dropped, whatever may have been the reason. Being of the opinion *Daulton* is controlling, we are of the opinion the decision of the Court of Appeals is in error.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is affirmed.

STEPHENS, C.J., and AKER, GANT, STEPHENSON and VANCE, JJ., concur.

VANCE, J., files a separate concurring opinion.

LEIBSON, J., dissents and files a separate dissenting opinion in which WINTERSHEIMER, J., joins.

VANCE, Justice, concurring.

I concur with the majority opinion. I do so because it fairly apportions liability according to the percentage of fault.

In *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984), we departed from the rule that contributory negligence is a bar to recovery in actions grounded on negligence. This rule had existed in Kentucky for more than a 100 years. On several occasions the general assembly declined to change the rule, yet the majority of this court saw fit to change

it by judicial fiat on the ground that "in a system in which liability is based upon fault, the extent of the fault should govern the extent of the liability." Thus we held that a plaintiff who is only partially at fault cannot fairly be required to bear the entire loss. It would seem to follow, therefore, that a defendant who is only partially at fault in causing an injury should not be required to bear the entire loss but should, likewise, be chargeable only to the extent of his fault.

The author of the majority opinion in *Hilen v. Hays, supra,* which held it basically unfair to charge a plaintiff with a greater share of the loss than his percentage of fault would justify, now dissents from a holding that it is basically unfair to charge a defendant with a greater share of the loss than his percentage of fault would justify. The dissent considers it fair for a defendant who is only 50% responsible for an injury to be saddled with 100% of the liability.

Admittedly, this was true at common law. Joint tortfeasors were each responsible for the entire loss, and the victim could collect his damage from either. At common law there was no contribution among tortfeasors because the negligence of each was considered to have caused the entire damage. Thus, at common law, when a plaintiff recovered a judgment against joint tortfeasors and collected his judgment from one of them, that one had no recourse against the other for contribution.

The gross unfairness of this situation has led most states, by statute, to change the common law and permit contribution between joint tortfeasors, generally on a pro rata basis, extending the fiction that each of joint tortfeasors were equally responsible for the entire injury.

The common law was further improved upon in some states which have adopted a variation of the uniform contribution among tortfeasors act. Arkansas, for example, has provided for contribution among tortfeasors according to the percentage of their fault. Ark.Stat.Ann. §§ 34–1001–1009.

Kansas has gone one step further and has provided by statute that liability of joint tortfeasors is not joint and several, but several only, and the liability of each of joint tortfeasors is limited by the percentage of his fault. Kan.Stat.Ann. § 60–258a.

In construing the Kansas statute, the Kansas Supreme Court stated:

"The perceived purpose in adopting K.S.A. 60–258a is fairly clear. The legislature intended to equate recovery and duty to pay to degree of fault. Of necessity, this involved a change of both the doctrine of contributory negligence and of joint and several liability. There is nothing inherently fair about a defendant who is 10% at fault paying 100% of the loss, and there is no social policy that should compel defendants to pay more than their fair share of the loss. Plaintiffs now take the parties as they find them. If one of the parties at fault happens to be a spouse or a governmental agency and if by reason of some competing social policy the plaintiff cannot receive payment for his injuries from the spouse or agency, there is no compelling social policy which requires the codefendant to pay more than his fair share of the loss. The same is true if one of the defendants is wealthy and the other is not. Previously, when the plaintiff had to be totally without negligence to recover and the defendants had to be merely negligent to incur an obligation to pay, an argument could be made which justified putting the burden of seeking contribution on the defendants. Such an argument is no longer compelling because of the purpose and intent behind the adoption of the comparative negligence statute."

*Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978). New Mexico has reached the same result by judicial decision rather than by statute. *Bartlett v. New Mexico Welding Supply,* 98 N.M. 152, 646 P.2d 579 (1982).

The majority opinion, therefore, is not a completely radical departure from the

mainstream of law completely without precedent in other jurisdictions as contended by the dissent.

Neither does the majority opinion seek to reward a wrongdoer at the expense of the victim. It merely holds that each wrongdoer shall bear a proportionate share of the loss according to his percentages of fault. The rule is a rule of fundamental fairness, and it applies equally to a plaintiff or to a defendant. There is no reason in fairness why one defendant should be required to pay the damages caused by the fault of another defendant.

The dissent maintains that the majority has violated a longstanding rule of statutory construction that statutes in derogation of the common law must be strictly construed. There is no such longstanding rule of statutory construction in Kentucky. In fact, the rule is just the opposite. K.R.S. 446.080 provides:

"All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature, *and the rule that statutes in derogation of the common law are to be strictly construed shall not apply to the statutes of this state.*" [Emphasis added.]

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The present dilemma arises from an unusual set of circumstances.

The common law rule is that all defendants found to be wrongdoers are jointly and severally liable for the full amount of the award. However, under KRS 454.040, the jury is permitted, in its discretion, to apportion the award.

In the present case the jury, under the mistaken impression that both defendants whom it found liable would be required to pay the verdict, elected to apportion the award. It apportioned the award 50% against the defendant, Carney, who was a builder, and 50% against the defendant (now appellant), Prudential, who owned the building and was charged with negligence in failing to maintain it properly. On ap-

peal, we held that the case against the builder, Carney, should have been dismissed, applying KRS 413.135, which purports to give immunity to a builder five years after completion of construction.

Right or wrong, *Carney v. Moody*, Ky., 646 S.W.2d 40 (1983), is now the law of this case.

Thus, the jury apportioned between a wrongdoer who should have been dismissed as a defendant before trial and another wrongdoer who would then have been liable for the full amount of the damages. The first "error" was corrected; the second error was *not.* The end result is a judgment for 50% of the damages. The statutory language in KRS 454.040 neither mandates nor justifies such an unfair result.

We depart from elemental tort law readily apparent from a study of *Prosser on Torts* and the *Restatement of Torts.* Prosser, *The Law of Torts* § 52 (4th ed. 1971), *Restatement, Second, Torts,* Ch. 44 (1979). We offer as justification for doing so a statute, KRS 454.040, which does not require us to do so in the present situation by any stretch of the imagination.

The common law principles applicable here are stated in the *Restatement, Second, Torts,* without exception, as follows:

"§ 875. Contributing Tortfeasors—General Rule.

Each of two or more persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm.

. . . .

"§ 880. One of Two Tortfeasors Has an Immunity

If two persons would otherwise be liable for a harm, one of them is not relieved from liability by the fact that the other has an absolute privilege to act or an immunity from liability to the person harmed.

. . . .

"§ 882. Joinder of Parties

If each of two or more persons is subject to liability for the full amount of dam-

ages allowed for a single harm resulting from their tortious conduct, the injured person can properly maintain a single action against one, some or all of them.[1]

The American Law Institute, speaking through the *Restatement*, represents the mainstream of American law. Its purpose is to *restate* the law, not to formulate new law, and to do so in principles that are, at the same time, fair and reasonable, understandable, and an integrated whole. We elect to throw out one piece of the puzzle, one part of the whole.

The principles of the *Restatement, Second, Torts, supra*, are also set out in Prosser, *Law of Torts*, § 52 (4th ed. 1971). At 315 Prosser states:

"*Single Indivisible Result*

Certain results, by their very nature, are obviously incapable of any logical, reasonable, or practical division. Death is such a result, and so is a broken leg or any single wound.... No ingenuity can suggest anything more than a purely arbitrary apportionment of such harm."

In a footnote Prosser describes KRS 454.040 as a statutory exception to the common law rules, "an *unusual* statute [which] permits but does not require the jury to apportion the damages [among named defendants] *arbitrarily*." Prosser, *supra* at 316, n. 39. (Emphasis added.) "Unusual" and "arbitrary" accurately describe this statute as presently applied. It is contrary not just to the mainstream, but to the entire course of American law. Why then should we not continue to limit the effect of the statute to its plain meaning?[2]

The expansion of KRS 454.040 beyond its terms is an act of judicial policy making, not of statute making. This is *our* policy, not the legislature's, and it is bad policy.

As originally enacted in 1839 (Kentucky Acts, Ch. 1214 (1839)), this statute was part two of a three part statute aimed at a particular wrong, viz., duelling. In Section One the act created a cause of action for the "surviving wife, and minor children," of persons killed in a duel "against the surviving principal, and the seconds and surgeons of both parties, and all others, aiding abetting, or encouraging the duel." It is not difficult to understand why the General Assembly would distinguish between "the surviving principal" in a duel and other participants who were only "seconds," "surgeons," and the like.

KRS 454.040 was originally enacted as Section Two of that statute. As originally enacted Section Two provided:

"That hereafter, in actions of trespass, it shall be lawful for the jury to assess several or joint damages against the several defendants; and when the jury find several damages, the judgment shall be in favor of the plaintiff, against each defendant, for the several damages, without regard to the amount of damages laid in the declaration, and a joint judgment for the costs."

To complete the picture, Section Three of the statute provided:

"That the failure to include any of the persons named in the first section, as defendants in the action, shall discharge such person from liability under this act; and they shall be competent witnesses for the plaintiffs or defendants."

It was not until 1888, in *Central Passenger Ry. Co. v. Kuhn*, 86 Ky. 578, 6 S.W. 441 (1888), that this court first applied Section Two of this 1839 statute to a negligence action. Until then it had been confined to trespass. It is significant that in applying this statute to negligence our court stated:

---

1. If a malefactor named as defendant thinks he is entitled to contribution or indemnity from a third party he pleads and pursues it on his own, not by throwing off a portion of his responsibility on the empty chair in the courtroom.

2. KRS 454.040 specifies in unmistakable language that it applies *only* to persons designated

"*defendants*," and, further, that in those circumstances where it applies, the jury *may*, in its discretion, electo to apportion liability among defendants found jointly liable. All of these statutory words of limitations are ignored in the present application.

"The jury had said that the plaintiff was entitled to recover $5,000; and if, as maintained by counsel for both defendants, they had no right to apportion this sum between the wrong-doers, then the reversal, if had, would only require the court below to enter a joint judgment for the $5,000, the whole of which might be recovered of [either] one...." *Central Passenger Ry. Co., supra,* 6 S.W. at 446.

We in Kentucky have always taken great care to remain in the mainstream of tort liability. Why do we now make a radical departure from the common law of torts to benefit wrongdoers? Most certainly it is *not* because KRS 454.040, literally or by history, requires such a result. For 130 years after its enactment it lay dormant, limited to its terms; that is, the jury, in its discretion, could elect to apportion liability by percentages among those parties named as defendants whom the jury first found to be jointly liable for a single harm. Expressly by its terms, as stated in Section Three of the 1839 statute, the statute did *not* apply to "persons" *not* "named ... as defendants." Historically by application, as quoted from *Central Passenger Ry. Co. v. Kuhn, supra,* as among named defendants, if one were later exonerated, because of immunity or otherwise, the whole of the judgment could then be recovered from the remaining defendant(s).

*Brown Hotel Co. v. Pittsburgh Fuel Co.,* 311 Ky. 396, 224 S.W.2d 165 (1949) is an excellent example of the limited construction formerly given KRS 454.040. In the *Brown Hotel Co.* case the jury had apportioned damages 50/50 between two defendants, Brown Hotel Co. and Pittsburgh Fuel Co., whose joint negligence had contributed to injure the plaintiff. After paying 50% of the judgment the Brown Hotel Co. demanded reimbursement from Pittsburgh Fuel Co. on grounds that Brown Hotel's negligence had been passive, and Pittsburgh Fuel Co. was the active wrongdoer. We narrowly limited the application of KRS 454.040, holding it did not bar Brown Hotel Company's claim, in order to protect the "common law" right to indemnity.

However, starting with *Orr v. Coleman,* Ky., 455 S.W.2d 59 (1970), our court started to change course. In *Orr v. Coleman,* we recognized that this was not a change of course mandated by KRS 454.040, but rather the application of the statute *by analogy* to a different area where it had no direct or express application. *Orr, supra,* 455 S.W.2d at 59.

In *Orr v. Coleman,* the plaintiff sued two defendants, and settled with one. She then recovered judgment against the remaining tortfeasor. We abandoned a perfectly good common law rule that applies in this situation, that payment in settlement by or on behalf of one of several tortfeasors shall simply be credited against the full amount of damages as fixed by the jury, pro tanto (*Restatement, Second, Torts,* § 885(3)), to fashion a rule *peculiar to this jurisdiction* permitting the jury to apportion between the nonsettling tortfeasor and the settling tortfeasor who is no longer a party. We reached out for a so-called "policy," presumably embodied in KRS 454.040, while conceding that the words of the statute have no direct application. Thus we made an unprecedented abandonment of the common law which benefits no one except the wrongdoer at the expense of the victim.

In *Nix v. Jordan,* Ky., 532 S.W.2d 762 (1975), the plaintiff was a passenger in a car driven by her husband which collided with Nix's automobile. She sued only Nix and did not assert a claim against her husband. Nix brought a third party complaint against the husband, demanding not only contribution, which was his right, but apportionment. The court held that KRS 454.040 "cannot fairly be construed that liberally." The court stated:

"Literally, the statute permits apportionment only against 'defendants,' which necessarily means joint defendants. Orval Jordan [the husband] was a defendant, but only as to the third-party complainants, and not as to the original plaintiff." *Nix, supra,* 532 S.W.2d at 763.

In the opinion this court candidly admits that *Orr v. Coleman* was based not on

statute but on "the public policy of encouraging settlements." *Id.* Why it was perceived that the rule of *Orr v. Coleman* will do more to encourage settlements than the longstanding common law rule giving credit for a previous payment, is not explained in *Orr v. Coleman* or elsewhere.

The next building block on top of *Orr v. Coleman* on the way to our present opinion is *Daulton v. Reed,* Ky., 538 S.W.2d 306 (1976). That case reached a bizarre result permitting apportionment of the damages awarded to the plaintiff between the defendant and a third party who had been sued originally, but later dismissed. The court states:

> "The same rationale [*Orr v. Coleman*] applies to this situation, in which the claim asserted by the Reeds against Phillips was later dropped, whatever may have been the reason." *Daulton, supra* at 308.[3]

This brings us to the present case, one more step along the path away from common law principles. By judicial policy we now uphold apportionment between the defendant and another party who was dismissed on appeal as a builder with a statutory grant of immunity under KRS 413.135. The defendant who is adjudicated 50% at fault, equally responsible for a single, indivisible harm, escapes his common law liability and the victim is limited to 50% of his damages.

The cocktail we mix from stirring KRS 454.040 into the longstanding common law rules of joint and several liability leaves Kentucky law with an extremely bad hangover. We provide a windfall for wrongdoers at the expense of their victims.

Here we sustain an apportionment erroneously made between a party subsequently held immune from liability, and the remaining party who was not immune. The innocent victim is compensated for half his damages. Half justice is half injustice. What if on the previous appeal we had held, not that the builder was immune, but

instead that he should have been dismissed because he was not negligent? Hopefully we would not uphold apportionment between a negligent defendant and a non-negligent defendant. Hopefully we would not permit the only party at fault to escape with payment of 50% of the damages.

Where the plaintiff suffers a single, indivisible harm, the concept of apportionment between the defendant and nondefendants may seem superficially appealing, but a consideration of the underlying consequences shows it is not.

The Concurring Opinion offers as a justification for the present case our recent decision adopting comparative negligence. *Hilen v. Hays,* Ky., 673 S.W.2d 713 (1984). The present case involves an innocent plaintiff, so the argument regarding comparative negligence is inapposite. However, the view that because we have judicially adopted comparative negligence we should abolish the principle of joint and several liability among defendants has been rejected in six of seven jurisdictions which have considered the problem. The view espoused in the Concurring Opinion is, to say the least, distinctly a minority view.

The Iowa Supreme Court, in *Rozevink v. Faris,* 342 N.W.2d 845, 848–49 (Iowa 1983), in rejecting the New Mexico position (cited in the present Concurring Opinion), states:

> "Of the six jurisdictions that have judicially adopted comparative negligence and also addressed the issue of joint and several liability, only New Mexico has abrogated the doctrine. (Cases cited.) Alaska, California, Illinois, Michigan and West Virginia *have not.*" (Emphasis added.)

> See: 1) *Coney v. J.L.G. Industries, Inc.,* 97 Ill.2d 104, 73 Ill.Dec. 337, 454 N.E.2d 197 (1983).

> 2) *Sitzes v. Anchor Motor Freight, Inc.,* 289 S.E.2d 679 (W.Va.1982).

> 3) *Weeks v. Feltner,* 99 Mich.App. 392, 297 N.W.2d 678 (1980).

**3.** Phillips was dismissed as a defendant during the trial, which may explain the confusion of

principles in *Daulton v. Reed.*

4) *Arctic Structures, Inc. v. Wedmore,* 605 P.2d 426 (Alaska 1979).

5) *American Motorcycle Association v. Superior Court,* 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978).

The Iowa Supreme Court had recently adopted pure comparative negligence in *Goetzman v. Wichern,* 327 N.W.2d 742 (Iowa 1983), a case cited and followed by our court in *Hilen v. Hays, supra.* In *Rozevink, supra,* the Iowa Supreme Court correctly concludes that the longstanding rule, "when the negligent acts of two or more defendants proximately cause a plaintiff's injury and the injury is indivisible, the plaintiff may sue the defendants jointly and severally and recover against one or all," is *"compatible with comparative negligence."* 342 N.W.2d at 850. The court states:

"[U]nder *Goetzman,* the injury is not divided but the recovery for the injury is proportionately reduced. The actors who caused harm are liable not for the entire harm but for the proportionally reduced amount. For that amount defendants may, consistent with our theory of comparative negligence, be held jointly liable.

Were we to modify or eliminate joint and several liability as [defendants] here advocate, the burden of the insolvent defendant would fall entirely on the plaintiff, and the plaintiff's damages would be reduced beyond the percentage of negligence attributable to that plaintiff. Comparative negligence does not mandate this further reduction.

Our conclusion is supported by the great weight of authority from other states which have decided the issue on common law principles. The doctrine of comparative negligence has been retained in all but one of the six jurisdictions which have adopted comparative

negligence by judicial decision and addressed the issue." 342 N.W.2d at 850.

In *Coney v. J.L.G. Industries, Inc., supra,* 73 Ill.Dec. at 344–45, 454 N.E.2d at 204–05, in which the Illinois Supreme Court *rejects* the argument that with the adoption of comparative negligence we should abandon the rule of joint and several liability of wrongdoers, the Illinois Supreme Court cites cases from *seventeen* jurisdictions which have "retained joint and several liability as a part of their comparative negligence doctrine." It is significant that in the *Coney* case the "[d]efendant *concedes* that where the plaintiff is free from fault each defendant should still be held jointly and severally liable." 73 Ill.Dec. at 346, 454 N.E.2d at 206. (Emphasis added.)

Most certainly, comparative negligence is no justification for a new rule freeing a wrongdoer from liability in the present situation. Here the plaintiff was an innocent victim, free from fault by any definition of the term. Comparative negligence, which we instituted as a reform to cure a preexisting injustice, is not an acceptable device to shelter a wrongdoer from a portion of his former liability for the single, indivisible harm which he helped to perpetrate.

KRS 454.040 should be limited to its terms. Its use should not be expanded beyond its plain meaning.

WINTERSHEIMER, J., concurs in this dissent.